Donald F. HARRISON; Dorothy A. Harrison; Lowell W. Saunders; Bill Johnson Reece; Peggy Lorene Reece; Lee J. Richards, as Trustee for Bakersfield Panorama Medical Clinic Inc., Employees Defined Benefit Pension Plan and Trust; Shirley S. Teitsworth; Frederick C. Porter; Marie C. Porter; Austin J. Hunter; Alice M. Hunter; Dorothy Klavetter; Gary W. Klavetter; Michael P. McCrossen; Hugh H. Fullington; Marshall C. Hollingsead; Gladys T. Hollingsead; Edward W. Saunders; Sanders Associates; Cardex Investments; M.E. Walker; Dave Barber; Kenneth G. Anderson; Louis Frank; and Evelyn Frank, Plaintiffs,

v.

Jimmy M. SHEATS; Glenn Wood; Gary J. Sampson; Duane H. Goertz; Gerald T. Ramey, Jr.; David K. Ramey; the Treasury Vault of West Covina, a California Limited Partnership; Thomas H. Werdel, Jr.; Werdel and Werdel, a Professional General Legal Partnership; and Ramey Management, Inc., a California Corporation, Defendants.

No. CV F 83–309–EDP.

United States District Court,
E.D. California.

May 8, 1985.

E. Terrence Woolf, Howe & Ness, Clovis, Cal., for plaintiffs.

Michael J. Lampe, Tulare, Cal., for defendants Goertz, Sampson and The Treasury Vault of West Covina.

Howard M. Jaffe, Jeffrey A. Tidus, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, Cal., for individual Werdel defendants and Werdel and Werdel.

Mark T. Mauerman, Borton, Petrini & Conron, Bakersfield, Cal., George E. Dalton, George E. Dalton & Associates, San Pedro, Cal., for defendant Jimmy Sheats.

Gerald T. Ramey, Jr., in pro per.

Frederick A. Cone, San Francisco, Cal., for defendant Glenn L. Wood.

## MEMORANDUM DECISION

PRICE, District Judge.

A complaint was filed on behalf of some thirty-seven (37) persons against the above-named defendants. The defendant Sheats, a certified public accountant, together with the defendants Wood, Goertz, Sampson and Ramey, and David K. Ramey, Jr., allegedly formed a limited partnership to engage in business, known as the Treasury Vault of West Covina. The Werdel defendants are attorneys, and their alleged participation consisted of preparing the certificate of limited partnership, the amendments thereto, and an offering circular, all of which were used to solicit customers to purchase an offering of 850 units of limited partnership interests.

Plaintiffs' complaint contains ten counts predicated on the provisions of the Federal Securities Acts,[1] two counts predicated upon violations of the California Corporations Code, a single count of intentional fraud, a single count of fraudulent omission of material fact, a single count of negligent misstatement, a single count of breach of contract, a single count alleging professional negligence by the attorney-defendants, and a single count for an accounting by the defendant general partners of the defendant Ramey Management, Inc.

Since the action was originally commenced, certain plaintiffs have been added, and other plaintiffs have entered voluntary dismissals.

We are here concerned with the fact that the plaintiffs have entered into a stipulated judgment with the defendant Sampson. In pertinent part, the parties to this agreement agree that:

(1) Sampson will consent to a default being entered against him in the instant action;

(2) Plaintiffs agree that they will not request the Court to enter a judgment on Sampson's default in consideration of Sampson paying to the plaintiffs $75,000, payable as follows:

(a) $37,500 on the execution of the agreement, and

(b) $37,500 on or before March 15, 1986.

The parties further stipulate that the total damages sustained by the plaintiffs to date are $1.1 million, and that if Sampson does not pay the second installment as agreed in the compromise settlement, plaintiffs may request the Clerk to enter a default judgment against Sampson in the total sum of $1.1 million. The agreement is silent as to which particular cause or causes of action that Sampson concede are the basis of his liability. An examination of the file indicates that Sampson has not answered the plaintiffs' complaint and no appearance, general or special, has ever been made on his behalf.

Plaintiffs noticed a motion requesting that the Court, by order, determine that the plaintiffs' settlement with the defendant Sampson has been made in good faith, and that any other "joint tortfeasors" shall be barred from any further claim against Sampson for equitable, comparative contribution, or partial or comparative indemnity based on comparative negligence or comparative fault. Admittedly, plaintiffs' motion is based on § 877.6 of the California Code of Civil Procedure.

The Werdel defendants oppose the motion, particularly the portion of the motion that would bar them from seeking contribution and/or indemnity from Sampson should plaintiffs prevail. Counsel for the defendants Wood and Sheats appeared in support of plaintiff's position.[2]

All counsel concede that this is an issue of first impression in the federal courts.

### Common Law Background

At common law, a release or dismissal of one tortfeasor for consideration, released all of the others, even though an express

---

1. These Federal Securities counts are the basis for this Court's jurisdiction.

2. In the papers submitted by counsel for Sheats and Wood, it appears that similar settlements are contemplated with regard to the defendant Goertz.

reservation was retained by the plaintiff to pursue the remaining joint tortfeasors. The theory of the common law rule was that there could be but one compensation for the joint wrong; since each joint tortfeasor in contemplation of the law was responsible for the whole damage, that once the injured party has been paid by any of them for the injury that he had suffered, the plaintiff's cause of action was satisfied. Under the common law theory, the amount of payment received was immaterial; the claim being unliquidated, any payment in consideration of a release or dismissal operated as full compensation. Attempts to circumvent the perceived harshness of this rule resulted in considerable litigation and distinctions of form rather than substance, *i.e.,* use of the covenant not to sue or the covenant not to execute in place of a release or dismissal. In 1957 the California legislature enacted Code of Civil Procedure § 877, which provided in pertinent part as follows:

Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort—

(a) It shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is greater; and

(b) It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors.

Immediately, the California courts were flooded with litigation that had as its purpose judicial determination of whether a particular settlement was in good faith. The leading case on this subject was *River Garden Farms, Inc. v. Superior Court* (1972) 26 Cal.App.3d 986, 103 Cal.Rptr. 498. In order to stem the flood of this litigation,

the California legislature adopted C.C.P. § 877.6:[3]

(a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors, upon giving notice thereof in the manner provided in Sections 1010 and 1011 at least 20 days before the hearing. Upon a showing of good cause, the court may shorten the time for giving the required notice to permit the determination of the issue to be made before the commencement of the trial of the action, or before the verdict or judgment if settlement is made after the trial has commenced.

(b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing.

(c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

(d) The party asserting the lack of good faith shall have the burden of proof on that issue.

Admittedly, it is under this statutory scheme that plaintiffs' motion proceeds.

### Issue Before the Court

In their opposing papers, the Werdel defendants succinctly limit the issues presently before the Court.

As will be discussed in more detail below, the attorney defendants do not dispute that the amount proposed to be paid by Sampson to plaintiffs in connection with the proposed settlement, al-

---

**3.** In 1980 subdivision (e) was added to this section to provide for immediate review by the next level appellate court of a good faith determination by writ of mandate.

though grossly disproportionate to his actual proportion of liability to plaintiffs, falls within the definition of "good faith" as used in California Code of Civil Procedure Section 877.6....

The only dispute which the attorney defendants have with the motion brought by plaintiffs and defendant Sampson is that plaintiffs and defendant Sampson seek to extinguish the attorney defendants' right to contribution or total or partial indemnity for claims arising under the *federal* securities laws by use of a California state statute (C.C.P. § 877.-6).

*The Applicable Law—State or Federal?*

■ From the recital of the pendent state causes of action, it is abundantly clear that the current federal jurisprudence requires the fraud counts, the omission of material fact count, the negligent misrepresentation count, attorneys' negligence count, the breach of contract count, and the partnership accounting count to be determined by California state substantive law. Of these, the fraud, intentional omission and negligent misrepresentation counts sound in tort.

The right of contribution among joint tortfeasors is also an abrogation of the common law. At common law there was no right of contribution among persons jointly or severally liable in tort, *i.e.*, among joint, concurrent or successive tortfeasors. Severe criticism by legal scholars led to the adoption of a Uniform Contribution Among Tortfeasors Act in 1939, and revised in 1955. However, California did not adopt such an act until 1957, when Section 875 was added to the Code of Civil Procedure. The statute as adopted, differed substantially from the Uniform Act, and certain features of that section should be noted.

First, the right to contribution does not arise until a money judgment has been rendered against two or more defendants in a tort action.

Second, the right of contribution may be enforced only after one tortfeasor has discharged the entire joint judgment, or has paid more than his pro rata share of the same.

Third, there shall be no right of contribution in favor of any tortfeasor who has intentionally injured the plaintiff.

Fourth, a liability insurer shall be subrogated to the rights of a tortfeasor judgment debtor.

Fifth, the right of contribution is independent of the right of indemnity. Where one tortfeasor judgment debtor is entitled to indemnity, there shall be no contribution between them.[4]

■ The causes of action predicated upon the California Securities Act present a different problem. California Corporations Code, Section 25505, specifically creates a limited right of contribution between persons jointly liable:

A corporation which is liable under this chapter shall have a right of indemnification against any of its principal executive officers, directors, and controlling persons whose willful violation of any provision of this law gave rise to such liability. All persons liable under this chapter shall have a right of contribution against all other persons similarly liable, except that no person whose willful violation of any provision of this law has given rise to any liability shall have any right of contribution against any other person guilty merely of negligent violation, and except that no principal executive officer, director, or controlling person whose willful violation has given rise to any liability shall have any right of contribution against the corporation to which he sustains that relationship.

Since this section was added to the California code eleven years after Sections 875

---

4. In their moving papers, the Werdel defendants seem to assume that the settlement in question would automatically bar them from asserting any rights of indemnity. As demonstrated above, Sections 875 and 877 of the Code of Civil Procedure are mutually exclusive; hence, the settlement per se would not affect the Werdel defendants' entitlement to indemnity.

and 877, it may be inferred that the legislature intended this section to govern all actions founded on the California Corporate Securities Act, and that said action would not be controlled by Sections 875, *et seq.*, of the Code of Civil Procedure.

### *The Federal Law*

■ The concept of contribution is not unknown in federal jurisprudence. It is permitted in admiralty, *Halcyon v. Haenn Ship C. & R. Corp.*, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952), and under the Federal Tort Claims Act, *United States v. Yellow Cab Co.*, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951) (the Federal Tort Claims Act carries the government's consent to be sued for contribution, not only in a separate proceeding, but also as a third-party defendant, seven Justices concurring).

15 U.S.C. § 77k(f), reads as follows:

All or any one or more of the persons specified in subsection (a) [Title 11 Registration violations], shall be jointly and severally liable, and every person who becomes liable to make any payment under this section may recover contribution as in cases of contract from any person who, if sued separately, would have been liable to make the same payment, unless the person who has become liable was, and the other was not, guilty of fraudulent misrepresentation.

In *Heizer Corp. v. Ross*, 601 F.2d 330 (7th Cir.1979), the Seventh Circuit held that:

However, although neither Section 14(a) nor 10(b) of the Securities Exchange Act of 1934 by their terms create an express civil remedy for their violation, and there is no indication that Congress, or the Securities and Exchange Commission when adopting Rule 10b–5, contemplated such a remedy, the existence of an implied private cause of action for violation of the statute and the rule is well established. *J.I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (§ 14(a) ); *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404

U.S. 6, 13 n. 9, 92 S.Ct. 165 [169 n. 9], 30 L.Ed.2d 128 (1971) (§ 10(b) ); *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 150–54, 92 S.Ct. 1456 [1470–72], 31 L.Ed.2d 741 (1972) (§ 10(b) ). *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730, 95 S.Ct. 1917 [1922], 44 L.Ed.2d 539 (1975) (§ 10(b) ); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 196–97, 96 S.Ct. 1375 [1382–83], 47 L.Ed.2d 668 (1976) (§ 10(b) ).

Once it has been established that private remedies may be implied under the securities laws, "a 'more equal distribution of justice' can best be achieved by ameliorating the common-law rule against contribution which permits a plaintiff to force one of two wrongdoers to bear the entire loss, though the other may have been equally or more to blame." *Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 111, 94 S.Ct. 2174, 2177, 40 L.Ed.2d 694 (1974).

This result is buttressed by the fact that of the seven express civil remedies provided in the Securities Act of 1933 and the Securities Exchange Act of 1934, three of those provide expressly for contribution. This indicates that when it occurred to Congress to do so, it expressed its desire that contribution be available among joint securities tortfeasors. Inasmuch as three specific liability provisions include the remedy of contribution, that ancillary remedy should be implied when the remedy itself has been implied as under Section 10(b) of the 1934 Act and Rule 10b–5.

"The existence of a statutory right implies the existence of all necessary and appropriate remedies." *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 239, 90 S.Ct. 400, 405, 24 L.Ed.2d 386 (1969). "[T]he power to make the right of any recovery effective implies the power to utilize any of the procedures or actions normally available to the litigant according to the exigencies of the particular case." *Deckert v. Independence*

*Shares Corp.,* 311 U.S. 282, 288, 61 S.Ct. 229, 233, 85 L.Ed. 189 (1940).

*Heizer Corp. v. Ross, supra,* at 331–332.

There is no doubt, therefore, that the Werdel defendants, depending upon what basis their liability may be determined, may be entitled to contribution from any other person jointly found liable with them for violation of the Federal Securities Acts. The final resolution of that question, however, must await the trial of the action.

IT IS THE ORDER OF THE COURT THAT:

1. There being no opposition, the Court determines that the settlement with the defendant Sampson is a good faith settlement and that the same is governed by the provisions of §§ 875, *et seq.,* of the California Code of Civil Procedure as to the state law tort causes of action.

2. The Court determines that the causes of action based upon California Corporate Securities Act are governed by the provisions of § 25505 of the California Corporations Code.

3. The Court determines that the rights of the Werdel defendants to contribution and indemnity on the causes of action based upon the Federal Securities Act and based upon federal law and depending upon the facts to be elicited at the trial, said defendants may have rights of contribution and/or indemnity.

4. The rights of the respective parties under the remaining causes of action are based upon California substantive law.