**In re NUCORP ENERGY SECURITIES LITIGATION,**

**No. M.D.L. 514.**

United States District Court, S.D. California.

April 15, 1987.

William S. Lerach, Milberg Weiss Bershad Spechtrie & Lerach, San Diego, Cal., David B. Gold, Law Offices of David B. Gold, San Francisco, Cal., for Class Plaintiffs.

Sheldon D. Camhy, Shea & Gould, New York City, for Executive Life Ins. Co.

Scott Metzger, Duckor & Spradling, San Diego, Cal., for Nelson-Dykes Co., Inc.

Watson B. Tucker, Mayer Brown & Platt, Chicago, Ill., for Continental Illinois Nat. Bank & Trust Co.

James Goldman, Kadison, Pfaelzer, Woodward, Quinn & Rossi, Los Angeles, Cal., for Arthur Andersen & Co.

William R. Fishman, Denver, Colo., for LaMar Plaintiffs.

Browning Marean, Gray, Cary, Ames & Frye, San Diego, Cal., for Republicbank Dallas, N.A.

James Spiotto, Chapman & Cutler, Chicago, Ill., for LaSalle Nat. Bank.

Earle Miller, Brobeck, Phleger & Harrison, Los Angeles, Cal., for Drexel Burnham Lambert, Inc.

Howard D. Finkelstein, Jenkins & Perry, San Diego, Cal., for Decatur Income Fund, Inc.

D. Scott Wise, Davis Polk & Wardwell, New York City, Donaldson, Lufkin & Jenrette Securities Corp.

Charles H. Dick, Jr., MacDonald, Halsted & Laybourne, San Diego, Cal., for The Circle K Corp.

Donald M. Wessling, O'Melveny & Myers, Los Angeles, Cal., for Richard Langdon, Daniel Bell, Larry D. Corl, Frederick Frank, John F. Masdea, Alvin J. Pearson, and David A. Stoller.

Robert Wright, Wright & L'Estrange, San Diego, Cal., for O. Morris Sievert.

Joseph J. Wheeler, Latham & Watkins, San Diego, Cal., for Richard L. Burns.

## AMENDED MEMORANDUM DECISION AND ORDER

IRVING, District Judge.

### I. BACKGROUND

In the above-entitled consolidated actions, plaintiffs assert various federal claims, based primarily upon the Securities Act of 1933, 15 U.S.C. §§ 77a *et seq.*, and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*, and various pendent state claims, based upon both statutory and common law theories, which arise from the sale of Nucorp securities. In March 1983, plaintiffs and defendants, under the guidance of Magistrate Harry R. McCue, began what would become an intensive series of settlement negotiations. In the summer of 1986, after Magistrate McCue had conducted over one hundred settlement or settlement-related conferences or hearings, plaintiffs and certain of the defendants executed and filed with the court a stipulation of settlement. The stipulation of settlement provides for a $41 million payment from the settling defendants—who consist primarily of the officers and directors of Nucorp—to the plaintiffs in exchange for a dismissal of all claims asserted against them.

Paragraph 20.L of the stipulation conditions the finality of the settlement upon entry of an order providing

(a) that the settlement embodied in this Stipulation is entered into and made in good faith, within the meaning of Sections 877 and 877.6 of the California Code of Civil Procedure, and (b) that all claims for contribution or indemnification, however denominated, against the Settling Defendants arising under the federal securities laws or state law in

favor of persons, including Non-Settling Defendants, who are asserted to be joint tortfeasors with the Settling Defendants in the Settled Claims and based upon liability on the Settled Claims are extinguished, discharged, satisfied and/or otherwise unenforceable.

On September 5, 1985, Magistrate McCue entered an order pursuant to paragraph 20.G of the stipulation of settlement, which calendared a hearing on the issue of the settlement's good faith for November 14, 1986. After the November 14 hearing, Magistrate McCue entered the order required by paragraph 20.L.

Pursuant to an order entered October 6, 1986, four of the non-settling defendants—Donaldson, Lufkin & Jenrette Securities Corporation (DLJ), Arthur Andersen & Co. (Arthur Andersen), the Circle K Corporation (Circle K), and Continental Illinois National Bank & Trust Company (Continental)—now seek a *de novo* review of Magistrate McCue's finding of good faith and order barring claims for contribution and indemnification. In their briefs, the non-settling defendants advance various arguments against Magistrate McCue's finding of good faith and order barring claims. The court has considered each of these arguments. Only those which raise serious questions of law or fact will be discussed below.

## II. DISCUSSION

### A. *Federal Claims for Contribution and Indemnification*

With respect to that portion of Magistrate McCue's order which bars claims for contribution or indemnification based on federal law, the primary argument advanced by each of the non-settling defendants is, in essence, the same. DLJ, Arthur Andersen, Circle K, and Continental each contend that the federal securities statutes under which they are sued provide them with potential causes of action for contribution and indemnification against the settling defendants, that federal rather than state law controls the availability and scope of these causes of action, and that federal law does not permit these causes of action to be extinguished prior to a trial on the merits of the claims asserted against them.

Of the various federal securities statutes upon which plaintiffs' actions rely, only section 11 of the 1933 Act creates an express right to contribution among those found jointly liable for its violation. 15 U.S.C. § 77k(f). Contribution, however, reinforces the policy underlying all federal securities laws since apportioning a plaintiff's loss among joint wrongdoers ensures that the deterrent effect of a judgment is felt by all culpable parties. *Heizer Corp. v. Ross*, 601 F.2d 330, 332 (7th Cir.1979). Thus, federal courts which have considered the issue have generally held that where a private remedy for the violation of a federal securities statute is implied, a right to contribution among joint violators of the statute should also be implied. *Id.* at 332–333. For purposes of this motion, then, the court assumes, without holding, that in addition to the express right to contribution created by section 11 of the 1933 Act, the non-settling defendants also have an implied right to contribution under those sections of the 1933 Act and the 1934 Act upon which the plaintiffs' other claims are based.

■ The court, however, declines to find that the non-settling defendants have any potential right to indemnification under the federal securities laws. The Ninth Circuit has expressly held that implying a right to indemnification under section 11 of the 1933 Act would undermine its statutory purpose of "assuring diligent performance of duty and deterring negligence." *Laventhol, Krekstein, Horwath & Horwath v. Horwitch*, 637 F.2d 672, 676 (9th Cir.1980), *cert. denied,* 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981). Federal courts which have considered claims for indemnification based on other sections of the 1933 Act, as well as on sections of the 1934 Act, have rejected them as contrary to the regulatory nature of the federal securities laws. *Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 724 (2nd Cir.1981); *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1288 (2nd Cir.1969); *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); *Stowell v. Ted S. Finkel Investment Services, Inc.*, 641 F.2d 323, 325 (5th Cir.1981); *Heizer,* 601 F.2d at 332 and 334. Accord-

ingly, the court holds that the non-settling defendants have no potential right to indemnification from the settling defendants under the federal securities laws.

The effect of a partial settlement or release on claims for contribution under the federal securities laws is governed by federal and not state law. *First Federal Savings & Loan Association v. Oppenheim, Appel, Dixon & Co.*, 631 F.Supp. 1029, 1034 (S.D.N.Y.1986); *Smith v. Mulvaney*, [1984–85 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,084 at 91,422 (S.D.Cal.1985), *appeal docketed*, No. 86–6076 (9th Cir. June 26, 1986); *see Laventhol*, 637 F.2d at 675. In this circuit, it is unclear to what extent and under what circumstances a non-settling defendant can exact contribution under the federal securities laws from a settling co-defendant. The non-settling defendants contend, citing the Ninth Circuit's opinion in *Laventhol* as authority, that a partial settlement cannot affect the potential contribution rights of defendants who are not parties to the settlement stipulation. Plaintiffs and the settling defendants, citing as authority the identical case, argue that the recent trend in federal case law encourages settlement in multi-defendant securities cases by permitting partial settlements to bar a non-settling defendant's right to contribution.

In *Laventhol*, plaintiffs filed a class action, alleging violations of section 11 of the 1933 Act, on behalf of investors who purchased limited partnership interests in the Western Properties Limited Partnership. The complaint named as defendants Western Properties, the general partner of Western Properties (the Doug Frank Development Corporation), the general partner's president and vice-president (Doug Frank and Michael Folb), the underwriter of the limited partnership issue (United States Trust Company), and the issuer's accountant (Laventhol). The complaint alleged losses of "at least" $2,000,000. United States Trust and Laventhol filed cross-claims for contribution against Frank and Folb. Prior to trial, plaintiffs entered a settlement agreement with Frank, Folb, Doug Frank Development, and Western Properties. Under the terms of the agreement, plaintiffs agreed to release all claims against the settling defendants in exchange for an $8,000 payment on account of costs and the cooperation of Frank and Folb during litigation of the remaining claims against United States Trust and Laventhol. After the District Court approved the settlement, Frank and Folb moved for summary judgment on the cross-claims for contribution, arguing in part that their settlement with plaintiffs barred any subsequent claims for contribution. The District Court granted the motion.

The Ninth Circuit reversed, noting that although the settlement eliminated the liability of Frank and Folb to the plaintiff class, it could not affect their liability in contribution to defendants who were not parties to the stipulation. 637 F.2d at 675. In response to the argument that permitting contribution rights to survive partial settlements would discourage parties from reaching settlements, the court stated that it was "unable to accept that argument as a general principle of securities regulation or as the deciding factor in this case" since Congress, by creating an express right to contribution under section 11, had "expressed its preference between the sometimes conflicting values of settlement and contribution." *Id.* Significantly, however, the *Laventhol* panel added that

> [i]f it could be said that appellees' settlement with the plaintiff class had resulted in their bearing their proper share of the damages, the case might be different. [citation omitted]. Clearly, however, the settlement did not accomplish this. In paying $8,000 on account of costs, and agreeing to co-operate with plaintiffs in their case against the remaining defendants, appellees have not borne their fair share of what is due to the plaintiff class, if the allegations of the complaint are to be believed. It is not enough for appellees to earn their freedom from liability by assisting the plaintiff class in recovering from these appellants for their alleged error in placing faith too blindly in Frank and Folb.

*Id.* Thus, the *Laventhol* panel expressly qualified its earlier emphasis of contribution over settlement, and suggested that a settlement which represents a settling de-

fendant's "fair" or "proper" share of the total damages might bar a non-settling defendant's right to contribution.

*Laventhol*, then, does not, as the non-settling defendants contend, stand for the inflexible proposition that the right to contribution under the federal securities laws may never be extinguished by a partial settlement. The non-settling defendants suggest, however, that even if *Laventhol* is read to permit a "fair" or "proper" share settlement to extinguish their right to contribution, the "fair" or "proper" share determination cannot be made until a plaintiffs' claims against them are tried, total damages are fixed, and the joint liability of them and the settling defendants is established. Only then, the non-settling defendants argue, can the amount to which they are entitled in contribution be determined and compared with the settlement amount. If the amount paid by the settling defendants matches or exceeds their ultimate liability in contribution, the non-settling defendants' claims for contribution may be barred. If, however, the settlement amount is less than the settling defendants' ultimate liability in contribution, the non-settling defendants' claims for contribution remain to the extent necessary to offset the difference.

The court is unwilling to accept this construction of *Laventhol*. *Laventhol* involved an attempt, prior to trial, to extinguish a non-settling defendant's right to contribution and its qualifying language must be considered in this context. Moreover, the non-settling defendants' construction would remove any incentive to settle a case prior to trial. It assumes that a settling defendant's "fair" or "proper" share is equal to his liability in contribution and thus makes his maximum exposure the same whether he settles without a trial or refuses to settle, regardless of the merits of his defense, and insists upon a trial. Finally, and perhaps most importantly, if the non-settling defendants' construction is correct then partial settlement of any federal securities case before trial is, as a practical matter, impossible. Any single defendant who refuses to settle, for whatever reason, forces all other defendants to trial. Anyone foolish enough to settle

without barring contribution is courting disaster. They are allowing the total damages from which their ultimate share will be derived to be determined in a trial where they are not even represented.

This court believes that *Laventhol* permits settlement by allowing pretrial extinction of a non-settling defendant's right to contribution under the federal securities laws so long as the settlement represents the settling defendant's "fair" or "proper" share of the damages sought. In order to prevent double recovery by a plaintiff, an implicit corollary of this rule requires that any claims remaining against a non-settling defendant be reduced by the amount of the settlement. The factors which this court believes are appropriately considered in making a "fair" share determination include the participation of an independent magistrate in the settlement negotiations, the adequacy of the settlement amount in light of the possible uncollectability of any larger trial judgment which might be entered against the settling defendant, and the adequacy of the settlement in light of any uncertainties surrounding the settling defendant's liability. *See Smith*, [1984–85 Transfer Binder] Fed. Sec.L.Rep. at 91,424. Whether the settlement amount bears a reasonable relationship to the settling defendant's proportional share of the total damages sought based upon his comparative culpability should also be considered. *Cf. id.* at 91,424–91,425 (court considered large disparity between settlement and trial judgment entered against non-settling defendant, holding that it did not prevent a "fair" or "proper" share finding under *Laventhol* since non-settling defendant bore "lion's share" of the culpability). This construction of *Laventhol* strikes the appropriate balance between encouraging settlement and the objective of deterrence which underlies the right to contribution. Allowing contribution rights to be extinguished prior to trial will encourage settlement since a defendant may be confident that his pretrial settlement has conclusively terminated his involvement in the litigation. The factors considered in determining whether the settlement represents the settling defendant's

"fair" or "proper" share of the total damages guarantee that a settling defendant escapes neither the responsibility for his wrongdoing nor, therefore, the deterrent effect which underlies the right to contribution.

■ Application of this analysis to 'the immediate case demonstrates that the $41 million settlement fund tendered by the settling defendants represents their "fair" or "proper" share of the damages sought by plaintiffs. First, Magistrate McCue participated extensively in the settlement negotiations, conducting over one hundred settlement or settlement-related hearings and conferences, in an attempt to fashion a global settlement of this litigation. Indeed, it was only because of Magistrate McCue's foresight that settlement discussions were initiated at all, and it was only because of his tenacity, in the face of numerous disputes between the sides and amongst parties on each side, that the negotiations produced the $41 million partial settlement. Moreover, in setting $41 million as the target settlement amount to be obtained from the officers and directors, Magistrate McCue properly treated these defendants as an entity. *Smith,* [1984–85 Transfer Binder] Fed.Sec.L.Rep. at 91,424.

Second, the $41 million settlement fund tendered by the settling defendants is adequate in light of uncertainties surrounding their liability and the possible uncollectability of any larger judgment which might be entered against them after trial. Plaintiffs contend that the liability of Nucorp's officers and inside directors—and particularly the liability of directors R.L. Burns and David Watt—is clear. Plaintiffs' evidence in this regard, however, may prove too much. The primary and excess insurance carriers of Nucorp's officers and directors have contributed a substantial portion of the $41 million settlement fund. By their terms, however, the policies issued by these carriers exempt from coverage acts arising from the dishonesty of the insureds. Moreover, both of these carriers contend that the policies themselves are void because fraudulently obtained and have filed state actions to rescind the policies on this ground. It is entirely possible that the proof which establishes the liabili-

ty of the officers and inside directors may also exempt their wrongful acts from coverage under the terms of the policies or completely void the policies and prevent them from covering the acts of *any* of the directors and officers. The strength of plaintiffs' proof against the officers and inside directors may also, therefore, eliminate a substantial source of the funds currently available to compensate plaintiffs for their injuries.

Finally, the $41 million settlement fund tendered by the settling defendants represents, based upon their comparative culpability, the share of the total damages properly attributable to them. Preliminarily, it should be noted that both this court and Magistrate McCue are in a position to make such a finding prior to a jury trial fixing plaintiffs' total damages and establishing the culpability of the non-settling defendants. This settlement occurs on the eve of trial, and the advanced state of the record has permitted both Magistrate McCue and this court to develop an extensive familiarity with the legal positions of the parties and the evidence upon which they intend to rely. Parties on both sides are represented by legal counsel with experience in federal securities litigation and have spared no expense in litigating their respective claims and defenses. This litigation has generated a seemingly endless number of discovery disputes which Magistrate McCue has been able to resolve only after reviewing innumerable evidentiary documents in light of the legal theories advanced by the parties. The parties' aggressive litigation of this case has likewise contributed to this court's familiarity with the legal theories and evidence underlying their respective positions. The court has ruled on a series of pretrial motions which culminated in massive motions for summary judgment filed by three of the four major non-settling defendants and heard during the winter and early spring of 1986. In order to rule on the motions for summary judgment alone, the court reviewed literally thousands of pages of deposition testimony and documentary evidence.

Based upon this information, the court finds that the $41 million settlement fund

tendered by the settling defendants is sufficiently related to the share of the damages attributable to them on a comparative culpability basis. The non-settling defendants make much of the fact that plaintiffs' own expert estimates a baseline damage figure of $230 million and that the $41 million tendered by what—in their opinion—must be the most culpable group of defendants represents less than 18% of this minimum damage amount. It should be noted, however, that the claims against each of the non-settling defendants involve serious allegations of misconduct under the federal securities laws. Moreover, the vast amount of deposition testimony and documentary evidence reviewed in preparation for the hearing on the motions for summary judgment filed by DLJ, Arthur Andersen, and Circle K indicate that many of these allegations are sufficiently supported by the evidence which the plaintiffs intend to introduce so as to raise serious questions for the trier of fact. Settlement negotiations were open to all parties in this litigation. After long and difficult settlement negotiations, the settling defendants chose to forego their right to trial and offer a substantial payment in order to "buy their peace" and remove themselves from the morass of this litigation. The non-settling defendants chose to insist upon their right to trial. In light of the amount of the fund tendered by the settling defendants, the significant risk taken by at least some of them by waiving their right to trial, the serious nature of the allegations which remain against the non-settling defendants, and the strength of the proof which supports these remaining allegations, the $41 million tendered by the settling defendants is reasonably related to the share of plaintiffs' total damages properly attributable to them on the basis of their comparative fault.

### B. State Claims for Contribution and Indemnification

The non-settling defendants also contend that, should they be found liable as joint tortfeasors with the settling defendants under the pendent state law claims, they will have state causes of action for contribution and indemnification. In this regard, California law, unlike federal law, expressly creates a procedure whereby a non-settling defendant's right to contribution or indemnification under state law may be extinguished prior to trial. Section 877 of the California Code of Civil Procedure provides that

> [w]here a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort— [¶] (a) it shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater; and [¶] (b) it shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasor.

In *American Motorcycle Association v. Superior Court*, 20 Cal.3d 578, 146 Cal. Rptr. 182, 578 P.2d 899 (1978), the California Supreme Court construed section 877(b) to permit a good faith settlement to bar not only a non-settling defendant's right to contribution, but also his right to partial or comparative indemnity. *Id.* at 604, 146 Cal. Rptr. 182, 578 P.2d 899. The California legislature subsequently codified this holding in section 877.6 of the California Code of Civil Procedure, which provides, in pertinent part, that

> [a] determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

Thus, sections 877 and 877.6 together permit a settling tortfeasor, upon a finding that a partial settlement is in good faith, to "buy his peace" and extricate himself from pending litigation without fear of future contribution or indemnification claims by non-settling joint tortfeasors.

The California Supreme Court recently defined good faith as that term is used in sections 877 and 877.6. In *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal.3d 488, 213 Cal.Rptr. 256, 698 P.2d 159 (1985), the court noted that a finding of good faith requires the trial court to inquire "whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of the comparative liability for the plaintiff's injuries." *Id.* at 499, 213 Cal.Rptr. 256, 698 P.2d 159. The court cautioned, however, against overemphasis on this factor, stating that a requirement that the settlement precisely equal the settling defendant's theoretical proportionate share would unduly discourage settlement. *Id.* The court concluded that a trial court evaluating the good faith of a settlement should consider a number of factors, including

> a rough approximation of plaintiff's total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of the settlement proceeds among the plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants.

*Id.* The court also noted that under the procedure prescribed by section 877.6, the good faith of a settlement would ordinarily be determined prior to the non-settling defendant's trial. *Id.* at 500 n. 8, 213 Cal. Rptr. 256, 698 P.2d 159.

The factors relevant to a finding of good faith under California law, then, are similar to the factors which are relevant to a finding that the settlement represents the settlor's "fair" or "proper" share of the damages under *Laventhol*. Thus, if sections 877 and 877.6 apply to the state law claims alleged in the immediate case, the reasoning underlying the prior finding that the settlement represents the settling defendant's "fair" or "proper" share of the damages would likewise require a finding that the settlement is in good faith. The non-

settling defendants, however, advance various arguments against application of sections 877 and 877.6 to claims for contribution and indemnification arising as a result of the state law causes of action alleged in this case.

All of the non-settling defendants contend that, whatever the applicability of sections 877 and 877.6 to claims for contribution and indemnification arising from plaintiffs' pendent common law causes of action, these sections cannot apply to claims for contribution and indemnification arising from plaintiffs' statutory causes of action under the California Securities Act, Cal. Corp. Code §§ 25000 *et seq.* In support of this contention, the non-settling defendants rely on a single case, *Harrison v. Sheats*, 608 F.Supp. 502 (E.D.Cal.1985). In *Harrison*, the court held that contribution and indemnification rights created by section 25505 of the California Corporations Code were not governed by sections 877 and 877.6. *Id.* at 506. The court cited no authority for this holding, stating only that because the California legislature enacted section 25505 eleven years after section 877, it could be inferred that sections 877 and 877.6 were not intended to govern claims for contribution and indemnification based on section 25505. *Id.* at 505–506.

■ This court finds the reasoning of *Harrison* unpersuasive and declines to follow its holding. That the legislature enacted a statute creating contribution and indemnification rights amongst joint violators of the California Securities Act does not, in itself, indicate an intent to bar application of a previously enacted statute which provides generally that rights to contribution and indemnification among joint tortfeasors may be extinguished by a good faith settlement. Section 25505 creates a right to contribution and indemnification among joint violators of the California Securities Act; it says nothing about the effect of a partial settlement upon this right. It is entirely consistent to create a right to contribution and indemnification among joint violators of the Act, while simultaneously permitting that right to be extinguished—insofar as it is to be asserted against a settling co-defendant—by a good faith partial settlement.

Circle K and DLJ argue that California law does not govern any claims for contribution or indemnification which they may assert as a result of the state law causes of action alleged in this case. Circle K contends that Texas law should control the availability of its claims for contribution or indemnification under the state law causes of action, and that Texas law does not permit pretrial extinction of a non-settling defendant's right to contribution or indemnification. DLJ contends that it is premature to make a choice of law determination with respect to this issue, but suggests that New York law should govern.

■ A federal court exercising pendent jurisdiction over state law claims must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). California courts apply the governmental interest analysis in the resolution of choice of law problems. *Hurtado v. Superior Court*, 11 Cal.3d 574, 579, 114 Cal.Rptr. 106, 522 P.2d 666 (1974); *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 161, 148 Cal.Rptr. 867, 583 P.2d 721 (1978). This analysis involves, essentially, a three-part test. First, the court must determine whether there is in fact a conflict between the competing jurisdictions since "there is obviously no problem where the laws of the two states are identical." *Hurtado*, 11 Cal.3d at 580, 114 Cal.Rptr. 106, 522 P.2d 666; *Offshore Rental*, 22 Cal.3d at 161–162, 148 Cal.Rptr. 867, 583 P.2d 721. If a conflict exists between the laws of the two jurisdictions, the court must then determine whether each jurisdiction has a legitimate interest in the application of its law and underlying policy. Again, if only one jurisdiction has a legitimate interest, there is no actual conflict of laws problem. *Hurtado*, 11 Cal.3d at 580, 114 Cal.Rptr. 106, 522 P.2d 666; *Offshore Rental*, 22 Cal.3d at 163, 148 Cal.Rptr. 867, 583 P.2d 721. If both jurisdictions have a legitimate interest in the application of their conflicting laws, the court should apply the law of the state whose interest would be the more impaired if its law were not applied. *Offshore Rental*, 22 Cal.3d at 164–165, 148 Cal.Rptr. 867, 583 P.2d 721.

Notwithstanding the contentions of DLJ, the record in this case is sufficiently developed to permit an immediate decision on the choice of law problem. Application of the first part of the governmental interest analysis suggests that a true conflict of laws problem exists. In order to encourage settlement while simultaneously ensuring that a non-settling defendant pays no more than his equitable share of the total damages, California adopted the good faith provisions of sections 877 and 877.6. *See Tech-Bilt*, 38 Cal.3d at 494, 213 Cal.Rptr. 256, 698 P.2d 159. These sections encourage settlement by allowing a good faith settlement to bar subsequent claims for contribution and indemnification against the settling defendant by non-settling defendants. *See* Cal.Code Civ.Pro. 877(b) and 877.6(c). These sections also protect the non-settling defendant by requiring that a good faith settlement bear a reasonable relation to the settlor's proportional share of the damages based upon his comparative liability, *see Tech-Bilt*, 38 Cal.3d at 499, 213 Cal.Rptr. 256, 698 P.2d 159, and by reducing the claims remaining against a non-settling defendant by the amount of the settlement. *See* Cal.Code Civ.Pro. 877(a).

New York, like California, has enacted a good faith statute in order to further the dual interest of encouraging settlement and protecting non-settling defendants from paying more than their equitable share of the damages. *First Federal*, 631 F.Supp. at 1032; *see* N.Y.Gen.Oblig.L. § 15–108. Unlike California, however, New York adheres to a more traditional definition of good faith as the absence of collusion or other indicia of *bad* faith. *See Torres v. State*, 413 N.Y.S.2d 262, 263, 67 A.D.2d 814 (1979); *Kelly v. New York Telephone*, 473 N.Y.S.2d 480, 481, 100 A.D.2d 537 (1984). Thus, in order to ensure that a non-settling defendant pays no more than his equitable share of the damages, New York permits reduction of any judgment entered against a non-settling defendant by the amount of the settlement or by the amount of the settling defendant's equitable share of the damages, whichever is greater. *See* N.Y.Gen.Oblig.L. § 15–108(a).

Texas, unlike California and New York, has not enacted a good faith statute expressly barring contribution or indemnification claims by non-settling defendants. *See Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764, 767 & 771 (Tex.1964). However, in order to encourage settlement while simultaneously protecting a non-settling defendant from paying more than his equitable share of the damages, Texas eliminates a non-settling defendant's motivation for filing an action for contribution by permitting any judgment ultimately entered against him to be reduced by the percentage of causation allocated to the settling tortfeasor. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 430 (Tex. 1984).

These three jurisdictions, then, further the identical dual interest through three slightly different means. The difference in means causes a difference in practical effect. In California, the risk of a settlement which, in hindsight, does not precisely equal the actual share of the damages attributable to the settling defendant is placed on the non-settling defendant. In both New York and Texas, that risk is placed on the plaintiff. There are, therefore, actual differences in the laws of these three competing jurisdictions.

Application of the second part of the governmental interest analysis confirms that a true conflict of laws problem exists. Each of these three jurisdictions has a legitimate interest in the application of its law and respective allocation of the risk associated with pretrial settlement. California certainly has a legitimate interest in the effect, upon a non-settling defendant's right to contribution or indemnification, of a settlement negotiated and executed in California which partially terminates multi-district securities litigation initiated and consolidated in California. New York too has a legitimate interest in the application of its law and risk allocation. DLJ is an underwriter with headquarters in the State of New York. New York may be legitimately interested in the scope and availability of contribution or indemnification rights to be asserted by a New York based underwriter. Texas too has a legitimate

interest in the application of its law since Circle K is incorporated under the laws of Texas.

■ Because this case presents a true conflict of laws problem, the third part of the governmental interest analysis must be applied. A determination as to which jurisdiction's interest would be the more impaired if its law were not applied does not require the court to "weigh" the competing interests in the sense of determining which conflicting law reflects the better or worthier social policy. Rather, the determination requires the court to make a proper allocation of respective spheres of lawmaking influence. *Offshore Rental*, 22 Cal.3d at 165, 148 Cal.Rptr. 867, 583 P.2d 721. Consideration of this factor compels application of California law. The narrow issue to be resolved by this ruling is the effect of a partial settlement on the contribution and indemnification rights of a non-settling defendant. The partial settlement was negotiated in California. The settlement partially disposes of a multi-district securities fraud case initiated and consolidated in California. This multi-district litigation involves a parent corporation whose chief base of operation during the alleged fraud was San Diego, California. To the extent that the settlement impacts the contribution and indemnification rights of a New York-based underwriter and a Texas corporation, the interests of New York and Texas are certainly implicated. But the impact upon these two states is entirely fortuitous since it occurs only because the non-settling defendants happen to be based in these states or incorporated under their laws. The overall effect of this settlement is most predictably a concern of California. Defining the effect of this settlement should be allocated to California lawmakers.

■ Circle K advances a final argument. Circle K contends that its alleged liability under the pendent state law theories is wholly vicarious and it therefore may be entitled to *total* equitable indemnity from the settling defendants. Even if California law applies, Circle K continues, sections 877 and 877.6 cannot bar claims for total equitable indemnity. The California Supreme Court has not yet resolved the issue

of whether a defendant whose liability is solely derivative or vicarious can seek total indemnification from a defendant who has entered a good faith settlement. *Standard Pacific of San Diego v. A.A. Baxter Corp.*, 176 Cal.App.3d 577, 585, 222 Cal.Rptr. 106 (1986). The California Courts of Appeal are apparently divided on the resolution of this issue. *Compare Angelus Associates Corp. v. Neonex Leisure Products, Inc.*, 167 Cal.App.3d 532, 213 Cal.Rptr. 403 (1985) *with IRM Corp. v. Carlson*, 179 Cal.App.3d 94, 224 Cal.Rptr. 438 (1986). This court adopts what it perceives to be the majority, and better reasoned, view, that sections 877 and 877.6 may bar, generally, claims for total equitable indemnity and, particularly, claims for total equitable indemnity based on a joint tortfeasor's solely vicarious liability. *Standard Pacific*, 176 Cal.App.3d at 585–589, 222 Cal.Rptr. 106; *see Lopez v. Blecher*, 143 Cal.App.3d 736, 738–740, 192 Cal.Rptr. 190 (1983), *IRM Corp.*, 179 Cal.App.3d at 104–107, 224 Cal. Rptr. 438.

## III.  CONCLUSION

*Laventhol* allows a non-settling defendant's right to contribution under the federal securities laws to be extinguished by a partial settlement so long as the settlement represents the settling defendants' "fair" or "proper" share of the damages sought by plaintiffs. The factors relevant to a finding of a "fair" or "proper" share include (1) the participation of an independent magistrate or judge in the settlement negotiations, (2) the adequacy of the settlement amount in light of the possible uncollectability of any larger judgment which might be entered against the settling defendants after trial, (3) the adequacy of the settlement amount in light of uncertainties surrounding the settling defendant's liability, and (4) whether the settlement amount bears a reasonable relation to the settling defendant's proportional share of the total damages based upon his comparative culpability. Application of the foregoing factors to the immediate case demonstrates that the $41 million settlement fund tendered by settling defendants represents their "fair" and "proper" share of the total damages sought by plaintiffs.

California law governs all claims for contribution or indemnification which may arise in the immediate case as a result of plaintiffs' pendent state law causes of action. Analysis of the factors set forth in *Tech-Bilt* compels a finding that the $41 million tendered by the settling defendants is a good faith settlement.

## IV.  ORDER

The $41 million dollar settlement fund tendered by the settling defendants, as described in the stipulation of settlement executed and filed in this action, represents their "fair" or "proper" share of the damages sought by plaintiffs. Accordingly, all claims for contribution or indemnification, however denominated, against the settling defendants arising under the federal securities laws in favor of persons, including the non-settling defendants, who are asserted to be joint tortfeasors with the settling defendants in the settled claims and based upon liability on the settled claims, are extinguished, discharged, satisfied, and/or otherwise unenforceable.

The settlement embodied in the stipulation of settlement executed and filed in this action is entered into and made in good faith as that term is used in sections 877 and 877.6 of the California Code of Civil Procedure. Accordingly, all claims for contribution or indemnification, however denominated, against the settling defendants arising under state law in favor of persons, including the non-settling defendants, who are asserted to be joint tortfeasors with the settling defendants in the settled claims and based upon liability on the settled claims, are extinguished, discharged, satisfied, and/or otherwise unenforceable.

In order to permit all parties to evaluate their positions in light of this memorandum decision, the current pretrial hearing dates of April 21 and 22, 1987 and the trial date of June 2, 1987 are vacated and will be rescheduled within 30 days.

IT IS SO ORDERED.