828 F.2d 579
 56 USLW 2251, Fed. Sec. L. Rep. P 93,397,
9 Fed.R.Serv.3d 92
 John L. WALLER, et al., Plaintiff-Appellee,
v.
FINANCIAL CORPORATION OF AMERICA, Defendant-Appellee,
and
Arthur Anderson & Co., Intervenor-Appellant.
Nessim HUSNI, et al., Plaintiffs-Appellees,
v.
FINANCIAL CORPORATION OF AMERICA, Defendant-Appellee,
and
Arthur Anderson & Co., Intervenor-Appellant.
 Nos. 86-6028, 86-6034.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 6, 1987.
Decided Sept. 22, 1987.
 
 Stuart L. Kadison, Michael C. Kelley and Thomas H. Keeling, Los Angeles, Cal., for intervenor-appellant.
 Wesley G. Howell, Jr. and Patrice I. Kopistansky, Los Angeles, Cal., for defendant-appellee Financial Corp. of America.
 George C. Zachary, Walter S. Weiss, John J. Stumreiter and James Y. Leong, Beverly Hills, Cal., David J. Bershad, Virginia A. LoPreto, San Diego, Cal., and Edward Labaton, Joseph Sternberg and Stuart D. Wechsler, New York City, for plaintiffs-appellees Waller and Husni, et al.
 Appeal from the United States District Court for the Central District of California.
 Before KENNEDY, SCHROEDER and POOLE, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 This appeal arises out of two consolidated Rule 10b-5 class action lawsuits brought by shareholders against Financial Corporation of America (FCA), several of its officers and directors, and its accountant, Arthur Anderson & Co. (Anderson). Plaintiffs reached a settlement agreement with FCA alone, in parallel actions filed for the purpose of expediting the settlement. Anderson sought to object to the settlement by filing a motion "to establish limited standing to object to the proposed settlement." The district court denied Anderson's motion and approved the settlement. We view Anderson's motion as a motion to both intervene as a matter of right and object to the settlement. We hold that while Anderson should have been granted intervenor status, it did not have standing to object to the settlement between plaintiffs and FCA.
 
 FACTS
 
 2
 On May 2, 1983 John L. Waller sued FCA and its then chief executive officer on behalf of a class of buyers of FCA common stock, alleging violations of federal securities laws and pendant state law claims (Waller I ). The claims were based on the dissemination of allegedly inaccurate financial statements for 1982. Anderson and other officers and directors were added subsequently by amendments.[1] In August 1984, following a restatement of FCA's financial statements, other plaintiffs filed a series of lawsuits[2] that were later consolidated into a single action (Husni I ).[3]
 
 
 3
 On April 7, 1986, at a joint status conference, plaintiffs and FCA informed the district court that they had agreed in principle to settle Waller I and Husni I. The settlement did not purport to affect the plaintiffs' claims against Anderson and the FCA officers and directors or cross-claims among Anderson, the individual defendants, and FCA. The court was told that a condition of the settlement was an expansion of the classes.[4] Counsel for Anderson declined to consent to the proposed amendments. In an effort to expedite matters, the classes suggested filing new, separate actions against FCA only, defining the classes as proposed by the settlement but otherwise substantially identical to the original actions. The district court approved this procedure and on April 10, 1986 the new law suits (Waller II and Husni II ) were filed.
 
 
 4
 The settlement was signed by FCA and the classes on April 11, 1986. Under its provisions, FCA agreed to pay at least $32 million to the classes in cash or stock. FCA also pledged to "co operate" in the prosecution of actions against Anderson and the individual defendants. In addition, FCA and plaintiffs agreed to share in the proceeds of the ongoing, unsettled actions according to a specified formula, with FCA's share to be approximately one-third. FCA also agreed to assert claims against Anderson and certain FCA officers and directors, and both FCA and plaintiffs pledged not to settle their respective suits without the prior approval of the other.
 
 
 5
 At a hearing on April 14, 1986 the district judge gave preliminary approval to the settlement. The court instructed Anderson to file a motion to establish standing if it wished to present objections to the settlement.[5] In compliance with the court's directive Anderson filed a motion on May 9, 1986 to "Establish Arthur Anderson & Co.'s Limited Standing to Object to Proposed Settlement." The motion alleged that the proposed settlement would adversely affect Anderson's formal legal rights by requiring FCA to "cooperate" with plaintiffs in the ongoing litigation and share in the proceeds obtained therefrom. Anderson contended that this arrangement would require FCA to breach a joint defense agreement entered into in June 1985 by FCA, Anderson and the other defendants in the original Waller and Husni actions. The purpose of the agreement was to protect privileged and confidential information exchanged in the course of the case preparation. The agreement provided that (1) privileged communications would remain privileged when communicated to other clients or counsel, (2) defendants who are dismissed or settle would continue to protect the confidentiality of "joint defense information", (3) specific enforcement or injunction are the appropriate remedies to compel performance, and (4) federal law governing the attorney-client work product privilege would govern. There was a further agreement to toll the statute of limitations with respect to any claims the defendants had against one another arising out of these proceedings. Anderson's motion was denied by the district court on June 5, 1986. Anderson timely appealed.
 
 
 6
 On July 3, 1986 a motions panel of this court construed the district court's order of June 5 as an order denying a petition to intervene as of right under Fed.R.Civ.P. 24(a)(2) and denied Anderson's motion to stay the upcoming settlement hearing.[6] The panel did, however, grant motions for expedited consideration and consolidation of the two cases.
 
 
 7
 At the hearing held July 7, 1986, the district court approved the settlement as provided by Fed.R.Civ.P. 23(e).
 
 DISCUSSION
 
 8
 As the motions panel held, Anderson's motion to "establish standing" may be construed as a petition to intervene as of right. By referring to Anderson as a "party" and in the course of its instructions, supra n. 5, the district court may have inadvertently misled Anderson into thinking that it was already a non-settling defendant for purposes of Waller II and Husni II. Anderson's motion did not merely seek to intervene, however. It also sought standing to object to the proposed settlement. A non-settling party does not necessarily have standing to object to a partial settlement. See infra at 582-583. We therefore construe Anderson's motion as first a petition to intervene and second as a motion for standing to object.
 
 Standard of Review
 
 9
 As discussed above, Anderson's motion sought both to intervene and to establish its standing as a non-settling party to offer objections to the settlement. An order denying intervention as of right is subject to de novo review. U.S. v. Stringfellow, 783 F.2d 821, 825 (9th Cir.1986); U.S. v. $129,374 in U.S. Currency, 769 F.2d 583, 585 (9th Cir.1985). The denial of a motion to establish standing to object to a settlement presents a mixed question of law and fact which we review de novo. U.S. v. McConney, 728 F.2d 1195, 1202 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 Intervention
 
 10
 A party may intervene as of right if it satisfies the four-part test formulated by this circuit on the basis of Fed.R.Civ.P. 24(a)(2):
 
 
 11
 (1) The party's motion must be timely; (2) the party must assert an interest relating to the property or transaction which is the subject of the action; (3) the party must be so situated that without intervention the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the party's interest must be inadequately represented by the other parties.
 
 
 12
 County of Fresno v. Andrus, 622 F.2d 436, 438 (9th Cir.1980).
 
 
 13
 Anderson's motion was timely and there is no reason to believe that the parties to Waller II and Husni II represent Anderson's interests. The extent of Anderson's interest and the impairment of that interest--the second and third factors--are closer questions to which we now turn.
 
 
 14
 This court has "rejected the notion that Rule 24(a)(2) requires a specific legal or equitable interest." Id. See also Blake v. Pallan, 554 F.2d 947, 952 (9th Cir.1977). We have noted that the "interest test" is "primarily a practical guide to disposing of lawsuits." County of Fresno, 622 F.2d at 438 (quoting Nuesse v. Camp, 385 F.2d 694, 700 (D.C.Cir.1967)). As a result, "Rule 24 traditionally has received a liberal construction in favor of applications for intervention." Washington State Building & Construction Trades v. Spellman, 684 F.2d 627, 630 (9th Cir.1982), cert. denied, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). See also Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 527 (9th Cir.1983).
 
 
 15
 Applying these principles we find that Anderson has interests in the litigation sufficient to permit it to intervene as of right. The gravaman of plaintiffs' claims is that FCA's 1982 financial statements were inaccurate. Anderson, as FCA's auditor and accountant, has an obvious interest in defending against such allegations. Furthermore, without intervention Anderson's capacity to effectively defend its interest would be both impaired and impeded. We therefore hold that Anderson should have been permitted to intervene. We now turn to the entirely separate issue whether Anderson had standing to object to the settlement.
 
 Standing
 
 16
 The Ninth Circuit has not previously addressed the issue when, if ever, a defendant has standing to object to a settlement involving other parties to a lawsuit. The view of other courts is that a non-settling defendant, in general, lacks standing to object to a partial settlement. In re Viatron Computer Systems Corp. Litigation, 614 F.2d 11, 14 (1st Cir.1980); In re Beef Industry, 607 F.2d 167, 172 (5th Cir.1979). See also Quad/Graphics, Inc. v. Fass, 724 F.2d 1230, 1232 (7th Cir.1983); In re Mid-Atlantic Toyota, 564 F.Supp. 1379, 1387 (D.Md.1983); Ampicillin Antitrust Litigation, 82 F.R.D. 652, 654-55 (D.D.C.1979); Seiffer v. Topsy's Int'l Inc., 70 F.R.D. 622, 627 nn. 5 & 6, 631 n. 11 (D.Kan.1976); Wainwright v. Kraftco Corp., 53 F.R.D. 78, 81 (N.D.Ga.1971). This rule advances the policy of encouraging the voluntary settlement of lawsuits. See Quad/Graphics, 724 F.2d at 1233. Courts, however, are also charged with responsibility for safeguarding the rights of parties. See id. There is therefore a recognized exception to the general principle barring objections by non-settling defendants to permit a non-settling defendant to object where it can demonstrate that it will sustain some formal legal prejudice as a result of the settlement. Quad/Graphics, 724 F.2d at 1233; Mid Atlantic Toyota, 564 F.Supp. at 1387. This standard strikes a balance between the desire to promote settlements and the interests of justice. It also maintains consistency with Fed.R.Civ.P. 41(a)(2) which governs voluntary dismissals of lawsuits. In this circuit, as elsewhere, a district court should grant a motion for voluntary dismissal unless a defendant can show that it will suffer some plain legal prejudice as a result. Hamilton v. Firestone Tire & Rubber Co., Inc., 679 F.2d 143, 145 (9th Cir.1982). It would, as the Seventh Circuit has pointed out, "be incongruous for a non-settling defendant to have any less of a burden in attempting to prevent such a voluntary dismissal than he would if he were the party being dismissed." Quad/Graphics, 724 F.2d at 1233.
 
 
 17
 Courts who have addressed this issue have found the formal legal prejudice standard to have been met in a variety of situations. There is consensus that a non-settling defendant has standing to object to a partial settlement which purports to strip it of a legal claim or cause of action, an action for indemnity or contribution for example. Beef Industry, 607 F.2d at 172, quoting 3 Newberg on Class Actions (1977) Sec. 5660b at 564-65; Altman v. Liberty Equities Corp., 54 F.R.D. 620, 625; Mid-Atlantic Toyota, 564 F.Supp. at 1387. Authority exists for finding legal prejudice sufficient to confer standing where a settlement invalidates the contract rights of one not participating in the settlement. Quad/Graphics, 724 F.2d at 1233 (citing Krause v. Rhodes, 640 F.2d 214 (6th Cir.1981)). A district court has suggested that a non-settling defendant has standing to object where the proposed settlement would eliminate its right to assert an in pari delicto defense. Florida Power Corp. v. Granlund, 82 F.R.D. 690 (M.D.Fla.1979).
 
 
 18
 Anderson urges us to find that a claim of formal legal prejudice is made out where a settlement compromises a nonsettling defendant's rights to preserve the confidentiality of communications protected by the common law joint defense privilege[7] and by the parties' own joint defense agreement. We, however, for the reasons below, do not believe that the settlement between the classes and FCA contravenes the joint defense privilege or the joint defense agreement. We therefore have no occasion to decide the issue put before us by Anderson.
 
 
 19
 Anderson contends that the settlement violates the joint defense privilege and agreement because it "virtually assures, if not requires" FCA to disclose to the plaintiff classes privileged communications obtained from Anderson. Anderson bases this assertion on the provisions of the settlement which (1) pledge FCA to "cooperate" with the classes in prosecuting class, derivative and direct actions against Anderson, (2) provide FCA with a share in the proceeds of such actions and (3) specify that neither FCA nor the classes will settle their respective actions against Anderson without the other's approval.
 
 
 20
 While we understand Anderson's concern, we do not believe that the settlement compromises Anderson's legal rights under the joint defense agreement or privilege. The settlement does not cut off or in anyway affect any of Anderson's claims; it only disposes of the claims of the classes against FCA. Contrary to Anderson's repeated assertions, nothing in the stipulation of settlement requires FCA or its counsel to breach the agreement or privilege. The fact that FCA has committed itself to "cooperate" with the classes does not mean that it must disclose privileged communications. The same is true of the sharing provision. Simply because FCA has some financial incentive to assist the classes against Anderson does not mean that confidential communications will be leaked; the classes have stated that they have not received nor do they expect any privileged information from FCA. On the other hand, Anderson has steadfastly refused to describe the substance of its allegedly confidential disclosures, claiming that to do so would largely defeat the purposes of this litigation. As a result, we have no way of knowing whether FCA possesses any privileged communications to share even if it is so disposed.[8] Finally, we note that if Anderson remains fearful that some particular confidence will be disclosed, we see no reason why it cannot, as suggested by the district court, seek injunctive relief or the disqualification of counsel, remedies which the joint defense agreement itself expressly prescribes.
 
 
 21
 In sum, we conclude that the settlement does not require the sharing of privileged information. There is, as a consequence, no basis for proceeding further in our inquiry whether the prospect of violation of the privilege and agreement confer standing: The settlement simply does not contravene these safeguards. At most, the settlement puts Anderson at something of a tactical disadvantage in the continuing litigation. Such an injury does not constitute plain legal prejudice.
 
 CONCLUSION
 
 22
 The district court should have permitted Anderson to intervene as of right. It was, however, correct in denying Anderson standing to object to the proposed settlement, as Anderson has not shown itself to be the victim of any formal legal prejudice. The district court may, indeed, consider it appropriate to frame a protective order which will assure against any improper disclosure of the terms of the joint defense agreement. Accordingly, we vacate the order denying intervention and remand for consideration by the district court of Anderson's need for protection. Anderson's motion to supplement the record, which it claims would more fully demonstrate the probability of a breach of the joint defense agreement, is denied without prejudice to Anderson's right to make such presentation to the district court.
 
 
 23
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 [1]
 On May 3, 1984, a class was certified to proceed against FCA and its officers and directors consisting of purchasers of FCA common stock between April 14, 1982 and May 2, 1983. A subclass was certified to proceed against Anderson comprised of purchasers of FCA securities between March 27, 1983 and May 2, 1983
 
 
 [2]
 The August 1984 lawsuits consisted of approximately fifteen class actions and several shareholder derivative suits
 
 
 [3]
 In Husni I the district court has thus far declined to certify a class, although it has indicated that certification would ultimately be granted
 
 
 [4]
 The settlement expanded the Waller class backward to April 1, 1980 and expanded the Husni class to run from May 3, 1983 to April 8, 1985
 
 
 [5]
 Judge Hatter told counsel:
 There will be ample time to be heard if indeed the Court determines that there is standing; and even without standing, as friends of the Court, or pursuant to the Manual on Complex Litigation, the Court might very well entertain some amount of opposition, not necessarily as much as counsel would like to have, but that would not change even indeed if it turns out that the Court rules that there is standing.
 I think I understand many of the objections already; to drag them out interminably doesn't help anyone. We have really a question of judicial economy more than anything else; and while it might be argued that it might make more sense to go ahead and hear the opposition fully or more fully before signing the orders and proceeding to the full fairness hearing, I deem that it makes more sense in terms of protecting the class involved or classes involved to sign the order now and proceed to the full fairness hearing, at which time we very well may hear more in terms of opposition.
 In that regard, I would ask that you follow the local rules; and if you want to notice a motion regarding standing, and the hearing in that regard, ... you [may] do so[,] but no later than ... a month prior to the full fairness hearing which will be scheduled for July 7th.
 So, therefore, we would want a hearing on standing by the nonsettling parties no later than June 7th.
 
 
 [6]
 The motions panel ruled that Anderson had failed to demonstrate either a likelihood of success on the merits on appeal or possible irreparable injury if the settlement hearing proceeded, citing Quad/Graphics, Inc. v. Fass, 724 F.2d 1230 (7th Cir.1983). It added that plaintiffs had shown that the balance of hardships tipped decidedly in their favor. The motions panel also denied plaintiffs' motions for summary disposition finding that the appeal was not frivolous nor the disposition obvious by application of relevant precedent
 
 
 [7]
 The joint defense privilege, which is an extension of the attorney client privilege, has been long recognized by this circuit. See Hunydee v. U.S., 355 F.2d 183 (9th Cir.1965); Continental Oil Co. v. U.S. 330 F.2d 347 (9th Cir.1964). Under the joint defense privilege "communications by a client to his own lawyer remain privileged when the lawyer subsequently shares them with co-defendants for purposes of a common defense." U.S. v. McPartlin, 595 F.2d 1321, 1326 (7th Cir.1979)
 
 
 [8]
 One reason for doubting that Anderson revealed confidential information is that Anderson acknowledges that it and FCA had claims against one another that would likely be brought in the future