Donald KIRKORIAN, et al., Plaintiffs,

v.

Eugene V. BORELLI, et al., Defendants.

And Related Cross Action.

No. C–86–6544 RFP.

United States District Court, N.D. California.

May 6, 1988.

Robert L. Lieff, Elizabeth Joan Cabraser, Richard M. Heimann, Lieff, Cabraser & Heimann, San Francisco, Cal., Peter E. Sitkin, Law Offices of Peter E. Sitkin, Berkeley, Cal., for plaintiff Donald G. Kirkorian, et al.

Eugene V. Borelli, in pro. per.

Art Groza, Law Offices of Art Groza, San Francisco, Cal., for defendant Hajime Higuchi.

Robert A. VanNest, Jan Nielsen Little, Keker & Brockett, San Francisco, Cal., for defendants Northern Counties Title Ins. Co. and Henry P. Quinn.

Steven R. Walker, Leland, Parachini, Steinberg, Flinn, Matzger & Melnick, San Francisco, Cal., for defendants Western Title Ins. Co. and John W. Goings.

David P. Bancroft, Sideman & Bancroft, San Francisco, Cal., for defendant Earl Appenrodt.

Dennis A. Babbits, Niesar, Cecchini & Gyemant, San Francisco, Cal., for defendant James Walsh.

## FINAL ORDER OF SETTLEMENT APPROVAL AND GOOD FAITH DETERMINATION; ORDER AWARDING ATTORNEYS' FEES

PECKHAM, Chief Judge.

### I. INTRODUCTION

On March 4, 1988, the Court granted preliminary approval of this $4 million settlement, and certified the proposed settlement class. The Class Action Settlement

Notice was distributed to potential settlement class members on March 8, 1988.

The settling defendants are the "Title Company Defendants" (Northern Counties Title Insurance Company, Fidelity National Title Insurance Company, Earl Appenrodt, Henry P. Quinn, John W. Goings and James R. Walsh). The non-settling defendants are Eugene Borelli, Ursula Borelli, Pyramid Realty, and Hajime Higuchi (a former Borelli salesman).

The parties request that the Court:

(1) Approve the settlement under Federal Rule of Civil Procedure 23(e);

(2) Determine that the settlement is one in "good faith" under California Code of Civil Procedure sections 877 and 877.6, and for purposes of a corresponding federal doctrine recognized in *In re Nucorp Securities Litigation*, 661 F.Supp. 1403 (S.D. Cal.1987).

(3) Award plaintiffs' counsel $70,000 in costs and $982,500 in attorneys' fees.

Class members had until April 5, 1988 to opt out or submit comments to the Court. Class response to the settlement proposal has been quite positive.

## II. DECISION

This Court grants final approval of the Settlement set forth in the submitted Agreement as fair, reasonable and adequate, and in the best interests of the class as a whole, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

This Court finds and determines that the Settlement is a "good faith settlement" within the meaning of California Code of Civil Procedure section 877.6, applying the *Tech–Bilt, Inc. v. Woodward–Clyde & Assoc.*, 38 Cal.3d 488, 213 Cal.Rptr. 256, 698 P.2d 159 (1985) and *In re Nucorp Energy Securities Litigation*, 661 F.Supp. 1403 (S.D.Cal.1987) decisions, and that the Title Company Defendants are entitled to the dismissal or bar of any and all cross claims against them for indemnity or contribution arising out of this action, under state or federal law, within the meaning of section 877.6 and *In re Nucorp*.

This Court hereby dismisses the claims of the *Kirkorian, Malouf, Axelrod, Naber* and *Zerbib* plaintiffs currently pending before this Court with prejudice as to the members of the Plaintiff Settlement Class and in favor of the Title Company Defendants, without cost to any party as against the other.

This Court hereby dismisses any and all cross-claims for indemnity or contribution under state or federal law which have been asserted or which could have been asserted by non-settling defendants Eugene V. Borelli, Ursula Borelli, Pyramid Realty, or Hajime Higuchi against the Title Company Defendants, and the Court hereby bars and permanently enjoins the future prosecution of any claims for indemnity or contribution of these non-settling defendants against the Title Company Defendants.

The Court has considered the relevant criteria for the award of attorneys' fees and costs in class actions, and finds that the amounts sought are reasonable in light of the factors set forth in *Moore v. James H. Matthews & Co.*, 682 F.2d 830 (9th Cir. 1982) and *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir.1975). Accordingly, the Court awards the applicants $70,000 in costs and $982,500 in attorneys' fees, distributed to the attorneys as requested. These amounts shall be paid from the Settlement Fund.

## III. DISCUSSION

### A. TERMS OF THE SETTLEMENT.

The class certified for settlement purposes is defined as follows:

All persons or entities who invested in the trust deed investment program originated and conducted by Defendants the Borellis through Pyramid Realty Company, from or about 1976, through or about October 1986 (the Class Period), by investing money with Borelli–Pyramid evidenced or purported to be evidenced by installment promissory notes, and secured or purported to be secured by deeds of trust on real properties owned or controlled by the Borellis, who have lost all or part of their original principal investments, promised interest thereon, and/or who have incurred associated

general and incidental damages. Specifically excluded from class membership are the 49 investors who are named plaintiffs in the 33 pending state court actions listed on Exhibit "A" to the Class Action Settlement Notice. Notwithstanding any such investments they may have made, all defendants named in the *Kirkorian* action are expressly excluded from membership in the settlement class.

The settling defendants ("Title Company Defendants") have agreed to pay a total sum of $4 million in settlement. The Borelli records indicate that the members of the settling class invested an aggregate of approximately $16.5 million dollars. Thus, if the $4 million were allocated pro rata among class members on the basis of this investment figure, each class member would receive a gross recovery of slightly less than 25% of principal invested.

However, in determining what each individual investor would recover, the parties wanted to take into account the fact that some claimants had received substantial referral fees from the Borellis in exchange for referring other investors into the scheme. In addition, the parties wanted to take into account the fact that some long-term Borelli investments have already generated years of interest payments at rates as high as 25% per annum. Accordingly, the parties generated a "net investment" formula for determining the allocation of the settlement fund.

Each claimant's "net investment" equals the total principal that claimant invested, *minus* amounts received as interest and referral fees, and then *plus* a uniform return of 7% simple interest per annum for each investment's term:

Net investment = Principal investment
 − Interest received
 − Referral fees
 + 7% return per annum (computed on the original principal invested)

Under the proposal, each claimant will receive an equal proportion of his *net investment*. Since the parties' present estimate of the total net investment of the class is $9.6 million, each settlement class member will receive a gross settlement recovery of approximately 42% of their net investment. If attorneys' fees and costs are awarded as requested, the resulting net settlement figure (actual amount of each claimant's settlement check) will approximate 31 to 34% of each claimant's net investment. Those investors determined to have been Borelli "insiders" (defined as any investors who "had actual knowledge prior to October 1986, of Borelli's systematic overencumbrancing of the properties used to secure class members investments") will receive no recovery.

Under the provisions of the settlement, the Court appoints Judge Thomas Kongsgaard as Settlement Allocation Special Master to resolve any allocation-related disputes. The parties plan to complete the allocation process, and resolve allocation disputes, so that settlement checks can be sent to settlement class members as of the June 20, 1988 settlement distribution date. It may be necessary for the Court to extend this date, if the resolution of allocation-related disputes takes longer than anticipated.

Defendants' payment of the settlement proceeds, and consummation of the Settlement Agreement, is not unconditional. The settlement is contingent upon an "opt-out" rate acceptable to the Title Company Defendants. The parties have filed, under seal, the maximum opt-out rates (expressed both as numbers of investors and magnitude of investment dollars) at which the settlement is required to go forward. If opt-outs rise above these levels of money or investors, the Title Company Defendants have the option of withdrawing from the settlement.

Finally, Defendants have conditioned the effectiveness of the settlement upon the Court's determination that the settlement is a "good faith" settlement within the meaning of California Code of Civil Procedure section 877.6.

## B. THE LEGAL STANDARD FOR SETTLEMENT APPROVAL UNDER FED.R.CIV.P. 23—AND APPLICATION OF THE STANDARD TO THIS CASE.

### 1. *The legal standard for settlement approval.*

Federal Rule of Civil Procedure 23(e) provides:

(e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

The newest edition of the *Manual for Complex Litigation 2d* (1986) states the following criteria for final settlement approval under Rule 23:

> In determining whether a class settlement should be approved, the court must decide whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued. The settlement must be fair, reasonable, and adequate under the circumstances. In cases primarily seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement. The defendant's inability to pay a greater amount may be an important factor, as may the need of the plaintiffs for immediate relief.

*Manual for Complex Litigation 2d* § 30.44 (1986).

The settlement approval criteria set forth in the *Manual for Complex Litigation 2d* are augmented by criteria discussed and utilized by class action commentators and courts. These criteria include:

1. The lack of collusion;

2. The comparison of the settlement amount with likelihood of success and range of recovery at trial;

3. Defendants' inability to pay a greater amount;

4. The amount and nature of discovery and evidence;

5. The stage of the proceedings at which the settlements were achieved;

6. The future expense and likely duration of litigation;

7. The recommendation of experienced counsel;

8. The plaintiffs' need for immediate relief; and

9. The number and nature of objections. *Officers for Justice v. Civil Serv. Comm.,* 688 F.2d 615, 625 (9th Cir.1982), *cert. denied,* 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983); *In re Warner Communications Securities Litigation,* 798 F.2d 35 (2d Cir.1986); *Weinberger v. Kendrick,* 698 F.2d 61 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir.1974); 2 *Newberg on Class Actions 2d* (1985) §§ 11.40—11.45.

*2. Application of the legal standard for settlement approval to the present case.*

■ Many of the above-identified factors weigh in this case in favor of approval of the settlement.

There is no evidence of collusion between plaintiffs and defendants. As the parties point out, this litigation has been characterized by zealous and effective advocacy on both sides.

The settlement amount is quite reasonable, given plaintiffs' likelihood of success and range of recovery at trial. Here, to gain any recovery against the Title Company Defendants, plaintiffs must first persuade the trier of fact that the Borelli–Pyramid investment program was indeed a fraudulent investment scheme, violative of the federal and/or state securities laws. Then, plaintiffs must establish the Title Company Defendants' knowing and active participation in the scheme, sufficient to generate a duty of disclosure to the investors. Finally, to make any resulting judgment collectible, plaintiffs must successfully reach beyond Northern Counties (which, while allegedly involved with Borelli, has no assets or insurance responsive to any judgment) to Northern Counties' parent, Western Title Insurance Company (which has recently become Fidelity National Title Insurance Company of California). Given all of these factors establishing that this is hardly a "slam-dunk" case for plaintiffs, a settlement of approximately 25% of the dollars lost by plaintiffs is reasonable.

Another factor identified by the authorities above is the amount and nature of

discovery and evidence. In this case, discovery is essentially complete, and the parties appear to possess sufficient documentation and information to assess accurately their chances at trial.

With respect to the future expense and likely duration of litigation, it is relatively clear that this case is both factually and legally complex. Continuation on through trial and possible appeal would require the expenditure of significant resources on both sides.

The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement. *Feder v. Harrington,* 58 F.R.D. 171, 176 (S.D.N.Y.1972). Here, plaintiffs' counsel possess substantial experience, not only in the field of securities class actions generally but in the specific area of trust deed litigation similar to this action.

Many members of the settlement class do have a need for immediate relief, since many are elderly and/or ill individuals who invested their life savings in the Borelli scheme. This factor works in favor of approval of the settlement.

An important factor to consider in approving a class action settlement is the number and nature of objections. As the parties point out, the courts have held that a settlement can be fair, notwithstanding opposition from a large segment of the class. *Reed v. General Motors Corp.,* 703 F.2d 170, 174 (5th Cir.1983) (objections by 600 of 1,500 class members); *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977).

Fortunately, the evidence suggests that the settlement class in this case overwhelmingly approves of the proposed settlement.

There are approximately 400 members in the settlement class. As of the postmark deadline of April 5, 1988, six timely exclusion requests were submitted. However, four of the investors who filed exclusion requests have now elected to re-join the class by filing "Withdrawal of Exclusion Requests" with the Court. The resulting net number of investors who are opting out, and the net dollar amount of those

investors opting out, fail to trigger the provision in the parties' settlement agreement entitling the Title Company Defendants to opt out of the settlement.

As of the April 5 deadline, the Court had received eight letters by potential settlement class members, commenting on aspects of the proposed settlement. One of these letters was written by Al Didero, who has excluded himself from the class. Of the remaining seven letters, three were written by members of the Edel family. By aggregate investment, these seven class members constitute approximately 2.5% of the class.

The concerns raised by the majority of the seven investors relate to the proposed formula by which the "net investment" of each class member is to be determined. The major objection appears to be the deduction of interest received to reach the net investment figure.

The Court agrees with the parties' argument that it would be unfair to allow long-term investors to enjoy these previous 16.5% to 20% returns without adjustment, particularly since these high returns were made possible only by the pyramidal nature of the Borelli scam. In other words, the high interest paid to long-term investors came directly from the investments of shorter-term investors. The proposed formula would allow *all* investors interest at a 7% per annum rate.

Two investors, Stephen Edel and Theresa Edel, object to the application for award of attorneys' fees and costs.

To date, class members have returned 105 claim forms. Plaintiffs have obtained all Borelli records, including copies of all Borelli promissory notes issued to settlement class members, and the ledgers and journals indicating all interest payments, from the Ursula Borelli Bankruptcy Trustee. Plaintiffs have employed Sonia Santamaria, who assisted the Borelli bankruptcy Trustee in organizing the Borelli records, to review and analyze these records, and the claim submissions of investors, to make the necessary net investment calculations

and to prorate the available Settlement Fund.

In sum, the overall class response has been quite favorable. Only a very few investors have chosen to opt out of the settlement. The handful of objections which have been received concern the formula for computing net investment.

The Court finds that the settlement meets the fairness and reasonableness requirements of Federal Rule of Civil Procedure 23(e) and applicable case law.

## C. CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 877.6 "GOOD FAITH" DETERMINATION.

The parties have made the settlement contingent upon a finding that it is in "good faith" within the meaning of California Code of Civil Procedure sections 877 and 877.6, and under the federal doctrine outlined in *In re Nucorp Energy Securities Litigation*, 661 F.Supp. 1403 (S.D.Cal. 1987) decisions.

Section 877.6 creates a procedure that allows a party settling an action before judgment to obtain the court's determination that the settlement is in good faith. Section 877 in turn provides that a good faith settlement extinguishes the contribution rights among the non-settling defendants, and reduces any eventual judgment plaintiff may win against the non-settling defendants by the amount of the partial settlement. Together, sections 877 and 877.6 permit a settling defendant, upon a finding that a partial settlement is in good faith, to "buy his peace" and remove himself from litigation without fear of future contribution or indemnification claims by non-settling joint tortfeasors. *In re Nucorp Energy Securities Litigation*, 661 F.Supp. 1403, 1410 (S.D.Cal.1987).

*1. Are sections 877 and 877.6, and a corresponding rule for federal claims, applicable to the present case?*

Federal courts in California have utilized the mechanism of sections 877 and 877.6 to determine whether a partial settlement is in good faith in cases, such as this one, involving pendent California state law claims. *See, e.g., Smith v. Mulvaney*, 827 F.2d 558, 559 (9th Cir.1987); *Nelson v. Bennett*, 662 F.Supp. 1324, 1327 & n. 4 (E.D.Cal.1987); *In re Nucorp, supra,* 661 F.Supp. at 1410–12.

Although the Federal Rules of Civil Procedure do not contain a statutory procedure for federal law claims analogous to that provided for by sections 877 and 877.6 for state law claims, federal district courts in California have fashioned a federal rule to evaluate the good faith of a partial settlement of federal law claims, and to extinguish contribution and indemnity claims asserted by non-settling defendants as to such claims. *Nelson v. Bennett, supra,* 662 F.Supp. at 1335–38; *In re Nucorp, supra,* 661 F.Supp. at 1408–1410.

Defendants argue that under the federal securities laws, claims for indemnification by co-defendants are not permitted since they would be contrary to the regulatory nature of the federal securities laws. *Laventhol, Kirkstein, Horwath & Horwath v. Horwitch*, 637 F.2d 672, 676 (9th Cir. 1980), *cert. denied,* 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981); *In re Nucorp, supra,* 661 F.Supp. at 1406. Such reasoning would also apply to the RICO claims here to the extent they are predicated upon claims of securities law violations. With respect to contribution claims, the *Nelson* court determined that implied rights of contribution do not exist under RICO. · *Nelson,* 662 F.Supp. at 1327. Thus the only federal claims which are of concern in *Nelson* and *Nucorp,* and here, are the contribution claims under the federal securities laws.

In *Nelson v. Bennett,* 662 F.Supp. 1324 (E.D.Cal.1987), the plaintiffs, as here, asserted federal causes of action based on the federal securities laws and RICO, as well as pendent state law claims. The plaintiffs entered into a proposed settlement agreement with some but not all of the defendants, the settlement agreement being conditioned on the court's order dismissing all cross-claims for contribution or indemnity asserted by non-settling defendants against the settling defendants.

The *Nelson* court first determined that the settlement was in "good faith" under sections 877 and 877.6, and, accordingly, barred all claims by the non-settling defendants for contribution and indemnity arising from the state law claims. *Id.* at 1327. Turning to the federal securities and RICO claims, the court concluded that the policy favoring settlements in federal courts was an overriding one, and that a good faith partial settlement would also operate to bar a non-settling defendants' implied rights of contribution under the federal securities laws. In so ruling, the court invoked federal common law to articulate a uniform federal settlement bar rule to evaluate the good faith of a partial settlement. *Id.* at 1338.

Similarly, in *In re Nucorp Energy Securities Litigation*, 661 F.Supp. 1403 (S.D. Cal.1987), plaintiffs asserted claims under the federal securities laws as well as pendent state law claims, and then partially settled their case with some of the defendants. *Id.* at 1405. In upholding a magistrate's order, the district court found that partial settlement of the state claims was in good faith under sections 877 and 877.6 such that the contribution and indemnification rights of the non-settling defendants arising out of the pendent state claims were barred. *Id.* at 1410–14. The court further held that federal law sanctions the partial settlement of federal securities claims by allowing pretrial extinction of the non-settling defendants' right to contribution under the federal securities laws, so long as the partial settlement represents the settling defendants' "fair" or "proper" share of the damages. *Id.* at 1408. The court found the settlement at issue to be fair and upheld the bar of cross-claims for indemnification and contribution.

In its recent decision in *Smith v. Mulvaney*, 827 F.2d 558 (9th Cir.1987), the Ninth Circuit approved in principle the proposition that a proper fairness hearing could protect settling defendants from contribution claims under the federal securities laws. In *Smith*, the plaintiff class settled its federal and state claims with some defendants, with court approval, pursuant to a hearing under Rule 23(e). The Ninth Circuit held that a Rule 23(e) hearing alone was not sufficient for determining the fairness of a partial settlement for purposes of extinguishing contribution rights of non-settling defendants, since the focus of a "good faith" hearing and a Rule 23 hearing are different. *Id.* at 562. The Ninth Circuit remanded the matter for further proceedings, thereby implicitly recognizing that a proper fairness hearing would provide protection from contribution claims.

### 2. Is the proposed settlement in "good faith" under applicable case law?

■ The factors to be applied in determining the good faith of a partial settlement under the federal settlement bar rule are set forth in both *In re Nucorp* and *Nelson v. Bennett, supra.* They are:

(1) The possible uncollectibility of any larger trial judgment that might be entered against the settling defendants;

(2) The adequacy of the settlement amount in light of any uncertainties surrounding the settling defendants' liability;

(3) The adequacy of the settlement amount in light of the comparative culpability of the settling defendants; and

(4) The participation of a magistrate or judge in the settlement negotiations.

*Nelson v. Bennett, supra,* 662 F.Supp. at 1338; *In re Nucorp, supra,* 661 F.Supp. at 1408.

The factors to be applied in determining the good faith of a partial settlement under the federal settlement rule are "the same types of factors which are considered under the California's settlement bar statute." [sic] *Nelson,* 662 F.Supp. at 1338.

■ The factors to be applied in determining good faith under sections 877 and 877.6 are set forth in the leading case of *Tech–Bilt, Inc. v. Woodward–Clyde & Assoc.,* 38 Cal.3d 488, 499, 213 Cal.Rptr. 256, 698 P.2d 159 (1985). The California Supreme Court held that a good faith settlement is one where "the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparable liability for the plain-

tiff's injuries." The court went on to enumerate the following relevant factors:

> [A] number of factors [must] be taken into account [in determining good faith] including [1] a rough approximation of plaintiff's total recovery and the settlor's proportionate liability, [2] the amount paid in settlement, [3] the allocation of settlement proceeds among plaintiffs, and [4] a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include [5] the financial conditions and insurance policy limits of settling defendants, as well as [6] the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants. [Citations omitted; numbers added.]

*Id.*

There is obviously some overlap between this "good faith" test and the basic fairness test outlined under Federal Rule of Civil Procedure 23(e). As defendants argue, some of the same factors which make this settlement fair under the Federal Rule imply that it qualifies as a good faith settlement under state law: [1] there is no evidence of collusion between the plaintiffs and defendants (and, indeed, the litigation has been marked by zealous and often vitriolic advocacy), [2] the settlement amount of $4 million is quite fair, even generous, given that there are significant legal issues calling any liability for the Title Insurance Company defendants into question.

The only major factor relevant to a "good faith" determination which the Court has not discussed in the context of the Rule 23(e) fairness determination is proportionality: is the proposed settlement fair in light of the comparative liability of the settling defendants? In this case, a review of the record demonstrates that the Title Company Defendants are paying an amount reasonably proportionate to their share of liability. The non-settling defendants (including Eugene Borelli, Ursula Borelli, and their Pyramid Realty Company) were the direct participants in the Borelli real estate scheme. The alleged Title Company Defendant participation was much more indirect.

In making this determination that the Title Insurance Company Defendants have paid an amount reasonably proportionate to their liability in the case, the Court takes judicial notice of the entire record in this case, and in particular the pleadings and affidavits filed regarding (1) plaintiffs' motion for class certification and (2) defendants' motion for summary judgment.

The non-settling defendants have not objected to a finding that this settlement is in good faith under California and federal law.

The law firm of Cotchett & Illston, which represents the plaintiffs in 33 state court actions who are explicitly *not* included in the settlement class, has filed some papers concerning the settlement, but both in these papers and at the hearing disavowed that it was making any objection to the settlement. The Court notes that as nonparties, the Cotchett plaintiffs lack any standing to comment on the fairness, adequacy or reasonableness of the proposed settlement. *See Waller v. Arthur Anderson & Co.*, 828 F.2d 579, 582 (9th Cir.1987). In addition, according to a declaration filed by Robert Van Nest, the Cotchett plaintiffs have been given a meaningful opportunity to settle their claims on parity with the class—and this opportunity continues, since settlement discussions between the Title Company Defendants and the Cotchett plaintiffs are ongoing.

In sum, the Court determines that this settlement is a "good faith settlement" within the meaning of California Code of Civil Procedure section 877.6 and the federal doctrine outlined in *In re Nucorp, supra.*

## D. ATTORNEYS' FEES.

Plaintiffs' attorneys request an aggregate award of $70,000 in costs and $982,500 in attorneys' fees. The plaintiffs' attorneys' request is a joint request, on behalf of four firms: Lieff, Cabraser & Heimann/Peter Sitkin (Class Counsel); Duane J. Perry; Bancroft, Avery & McAllister; and Bianco, Brandi, Jones & Rudy. Plaintiffs'

documentation contains a breakdown of costs and attorneys' fees by firm.

An important factor in this case is that for a significant period of time, the litigation was not a class action. Thus, over 70% of the class members had individual fee arrangements with class counsel providing for a contingent fee of 25% of the recovery. Exhibit E to Cabraser Declaration (client list, containing names of 255 members of the settlement class who entered into individual "Attorney Representation Agreements" with class counsel); Exhibit F to Cabraser Declaration (exemplar Attorney Representation Agreement providing for 25% attorneys' fee).

### 1. The legal standard for an attorneys' fee award under Rule 23.

 A court is free to exercise its equitable powers to award reasonable attorney's fees out of a common fund where that attorney's actions "create, discover, increase or preserve" the fund. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir.1977). The common fund doctrine is clearly applicable in this case. Plaintiffs' counsel have labored long and hard, and their efforts have led directly to a $4.0 million settlement benefitting the plaintiff class.

 In fixing counsel's fee, a court cannot, without scrutiny, simply honor counsel's request. Rather, "[i]n exercising its equitable power to award attorneys' fees for the creation of a common fund ... the Court acts as the guardian of the rights of absent class members ... since the portion of the fund allocated to attorneys' fees will obviously not be available to remedy the substantive wrongs for which the fund was created." *In re Capital Underwriters, Inc. Securities Litigation*, 519 F.Supp. 92, 98 (N.D.Cal.1981) (citations omitted).

The courts have used three basic methods to determine the fee award. First, courts have simply applied a percentage to the overall award. *See, e.g., In re Scientific Control Corp. Securities Litigation*, 80 F.R.D. 237, 244 (S.D.N.Y.1978) (partly basing award on percentage of recovery). Second, courts have used a method called

the *Johnson–Kerr* method, which involves an analysis of twelve factors first identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), and adopted by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). Finally, courts have adopted the "lodestar" approach set forth in *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 166–69 (3d Cir.1973), in which the court multiplies the hours worked by the attorney's billing rate. Each method has been the target of considerable criticism. *See, e.g.*, Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237 [hereafter the "Task Force Report"].

The Ninth Circuit has responded to this criticism by approving an approach that blends the *Kerr–Johnson* and the lodestar methods to take advantage of the most attractive qualities of each. *Moore v. Jas H. Matthews & Co.*, 682 F.2d 830, 840–41 (9th Cir.1982) (approving procedures followed in *Capital Underwriters, supra*, 519 F.Supp. at 99). Under this approach, the lodestar amount is equated with the first element of the *Kerr–Johnson* analysis— the time and labor required. The other *Kerr–Johnson* factors are then considered in setting the hourly rate and in determining the multiplier, if any. *Capital Underwriters, supra*, 519 F.Supp. at 100.

The Ninth Circuit has not, however, disapproved the use of the percentage of recovery approach in an appropriate case. In addition, the Supreme Court has recognized the legitimacy of the percentage of recovery approach as recently as *Blum v. Stenson*, 465 U.S. 886, 901 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984) (recognizing that under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed upon the class.")

In this case, the Court adopts an approach that blends the percentage-based recovery and *Kerr–Johnson* factors. Such an approach is appropriate, given the high proportion of class members who signed

individual Attorney Representation Agreements (providing for a 25% attorneys' fee).

### 2. Application of the legal standard to the facts of this case.

■ The plaintiffs' attorneys' have submitted detailed documentation of their requested costs of $70,000. Cabraser Decl. and Exhibits A, B, C, and D. The Court approves this amount of costs, to be awarded from the common settlement fund.

The remaining amount of the fund is $3,930,000. In recognition of the fact that such a large proportion of the class had signed agreements providing for 25% attorneys' fees, we take as our initial estimate of fees 25% of $3,930,000, or $982,500. We then review this initial estimate for reasonableness in light of the *Kerr–Johnson* factors.

As recognized by the Ninth Circuit, the *Kerr–Johnson* factors include:

(1) [T]he time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill necessary to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of professional relations with the client, and (12) awards in similar cases.

*Moore, supra,* 682 F.2d at 838 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), and *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d at 69–70.)

In this case, the $982,500 is reasonable in light of the *Johnson–Kerr* factors, and the Court approves both the total amount and the requested distribution of the total to each set of attorneys.

### (1). The time and labor required.

Plaintiffs' attorneys have spent thousands of hours on the *Borelli* litigation since its inception in late 1986. At the time of this settlement, almost all of the discovery in the case had been completed. Intensive discovery and document review, legal research, briefing, client consultations and court appearances have each consumed a substantial number of hours. In addition, the Court notes that under the Settlement Agreement, class counsel will continue to spend a number of hours with class members until the final settlement distribution date, assisting class members in determining their net investments.

### (2). The novelty and difficulty of the questions involved.

At the outset of this litigation, the prospect for any recovery from the Title Company Defendants was not encouraging. The only reported federal case law specifically discussing title insurer liability in the securities context was discouraging. *Wright v. Schock,* 571 F.Supp. 642 (N.D. Cal.1983), *aff'd on other grounds* 742 F.2d 541 (9th Cir.1984); *Lingenfelter v. Title Ins. Co. of Minnesota,* 442 F.Supp. 981 (D.Neb.1977). The Lieff, Cabraser and Heimann firm knew, from its firsthand experience in *Wright,* of the possibility of expending thousands of dollars of costs and thousands of hours in time in the development of a complex and novel liability theory which might fail to win the Court's acceptance.

### (3). The skill necessary to perform the legal services properly.

The Lieff, Cabraser & Heimann firm possesses extensive experience in class action and other complex litigation. The Court finds that plaintiffs' counsel have considerable experience and skill in federal securities law and class action practice.

### (4). The preclusion of other employment by the attorney due to acceptance of the case.

Class counsel state that their devotion to pursuing this case precluded them from accepting a number of other promising cases which were submitted for their consideration during 1987. Applicants' Memo in Support of Application for Attorneys' Fees at 27. This representation is credible, given the complexity of the legal questions involved in the case, and the extensive dis-

covery (and discovery-related disputes) involved in the litigation.

*(5). The customary fee for similar work in the community.*

Review of numerous federal attorneys' fee decisions in common fund cases during the last 25 years has led commentators to articulate the rule that "in the normal range of common fund recoveries, common fee awards fall in the 20 to 30% range." Newberg, *Attorney Fee Awards* (1985), §§ 2.08, 2.31–2.33. The applicants' Memo includes a chart which demonstrates that applicants have been awarded fees similar to the 25% requested in this case for their work in similar trust deed securities class actions in the Northern and Eastern Districts of California. Applicants' Memo in Support of Application for Attorneys' Fees at 23–25, 27.

*(6). Whether the fee is fixed or contingent.*

As noted above, plaintiffs' attorneys have negotiated contingent fee agreements with their clients in this case, providing for a 25% attorneys' fee. 255 members of the class had signed such agreements before certification of the class.

*(7). Time limitations imposed by the client or circumstances.*

Because the investor community victimized by the Borelli scheme is characterized by large individual losses, advanced age and/or ill health, time was of the essence in the prosecution of this litigation.

*(8). The amount involved and the result obtained.*

This action involved a class loss of approximately $16.5 million and results in a recovery of $4 million. As noted above, this is a relatively impressive result for the plaintiffs, given the novelty of the legal questions presented.

*(9). The experience, reputation and ability of the attorneys.*

As stated above, class counsel are noted for their experience and ability in securities class actions.

*(10). The "undesirability" of the case.*

This is a *Kerr–Johnson* factor with little applicability to the present case. This case was not politically or ethically "undesirable." However, it was arguably somewhat undesirable from a practice standpoint, due to the necessity for a great amount of document review and other discovery work on the part of applicants.

*(11). The nature and length of the professional relations with the client.*

The applicant firms of Duane J. Perry, Bancroft, Avery & McAlister, and Bianco, Brandy, Jones & Rudy each represent a small number of Borelli investors on an individual basis. These applicants have longstanding professional relationships with these clients. The Lieff, Cabraser & Heimann firm has represented, since this action's inception in late 1986, a substantial proportion of the settlement class.

*(12). Awards in similar cases.*

As noted above, awards of from 20% to 30% of the fund in common fund cases are quite common.

In sum, the Court finds that the applicants' request of $70,000 in costs and $982,500 in attorneys' fees is a reasonable request. As a percentage of the recovery in this case, it is within a reasonable range; and it is supported by each one of the applicable *Johnson–Kerr* factors. The method of allocation among each attorney group suggested by the applicants (based upon the ratio of their respective plaintiffs' aggregate investments) is a reasonable one. The Court orders that these amounts of costs and attorneys' fees shall be awarded from the Settlement Fund as requested by the applicants.

IT IS SO ORDERED.